IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANGELA KNOX,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | **CV-03-HS-918-S** |
| **V.** ) | |
| ) | |
| **THE GAP, d/b/a** ) | |
| **BANANA REPUBLIC FACTORY** ) | |
| **STORES,** ) | |
| ) | |
| **DEFENDANT.** ) | |

**MEMORANDUM OF DECISION**

The Court has before it the May 17, 2004 motion of the Defendant Banana Republic Factory Stores ("BRFS") for summary judgment. (Doc. 13)  Oral argument on the Motion was held on November 12, 2004.

**I.
Procedural History**

Plaintiff Angela Knox commenced this action on April 21, 2003 by filing a complaint in this Court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, as amended by the Civil Rights Act of 1991, and 42 U.S.C. § 1981.  Plaintiff contends that Defendant's failure to award the Plaintiff the position of temporary assistant manager in the Summer of 2002 constitutes racial discrimination, and that after the Plaintiff filed her lawsuit alleging discrimination, the Defendant subjected her to retaliation.  Defendant's May 17, 2004 motion for summary judgment asserts that (1) the Plaintiff has failed to make a prima facie case of racial discrimination; (2) that even if Plaintiff has established a prima facie case, the Plaintiff has failed to rebut the Defendant's

articulated legitimate nondiscriminatory reason for failing to award the temporary assistant manager position to the Plaintiff; and (3) that the Plaintiff has failed to make a prima facie case of retaliation. For these reasons, the Defendant argues that it is entitled to summary judgment on all counts of the Complaint.

Both parties have filed briefs and submitted evidence in support of their respective positions. Defendant submitted evidence[1] in support of its own motion for summary judgment and filed a supporting brief on May 17, 2004. On June 4, 2004, Plaintiff filed evidence[2] in opposition to Defendant's motion for summary judgment and a brief in response to the Defendant's motion for summary judgment. The Defendant filed a reply on June 14, 2004.

## II.
## Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000)  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those

---

[1] The Defendant submitted the depositions of the Plaintiff Angela Knox, Stacie Wood, Laura Shepard, Melissa Fuller, and a declaration by Michelle Alexander. References to the deposition transcripts are denoted by the last name of the deponent, followed by the abbreviation "Dep.," followed by the page number or the deposition exhibit being referenced.

[2] The Plaintiff submitted the depositions of Angela Knox, Stacie Boles-Wood, Melissa Fuller, Laura Shepard, the August 14, 2004 contract for Melissa Fuller regarding manager in an "acting capacity," Angela Knox's Declaration with attached time sheets, the Notice of Service Waivers, the Executed Summons, and Defendant BRFS' Responses to Plaintiff's Interrogatories and Request for Production of Documents.

portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III.
### Relevant Facts[3]

Angela Knox began working for Banana Republic in March 2001 as a part-time sales

---

[3] Facts are undisputed unless otherwise expressly noted.

associate. (Knox Dep. at 32, 39.) Prior to working at BRFS, Knox served for a year on active duty in the United States Army and for seven years in the reserves. (Id. at 17.) She worked as a telemarketer for Olan Mills Photography for a few months, a cashier for Lorch's Diamond Center for approximately one year, a file clerk at Financial Management for approximately five months, a customer service representative for Stanley Steamer for approximately one year, a "counter-clerk" for Tant and Tant Cleaners for a few months, a teachers' assistant at a day care facility "on and off" for a few years, a customer service representative for Comdata for a few months, and a sales clerk at Fred's Dollar Store for a few months. (Id. at 57-58, 71.)

In March 2002, after working part-time at BRFS for a year, Knox began to work at Banana Republic in a full-time capacity. (Id. at 59.) Knox's position at that time was a full-time stock supervisor. (Id. at 61.) As a stock supervisor, the Plaintiff earned $9 per hour. (Id. at 62-63.) Her duties as a stock supervisor included processing each shipment within 24 hours of receiving it, which meant that the stockroom had to be clean, all the back stock had to be put out, and all of the invoices had to be filed. (Id. at 65.) Although she was called a supervisor, Knox's position at BRFS was not managerial. (Wood Dep. at 28; Shepard Dep. at 41.)

Knox reported to Stacie Boles-Wood,[4] the store manager at BRFS for part of the time the Plaintiff worked for the company. (Knox Dep. at 66.) Wood is biracial. (Id.; Wood Dep. at 49, 86.) Oliver Johnson, a black male, and Orest Michaels, a white male, also were mangers at BRFS while Knox was employed there. (Knox Dep. at 67-68.) Michaels also was the store manager at the GAP, another retail store, for a period of time, but even then he was present at the BRFS store frequently

---

[4] Stacie Boles-Wood was known as Stacie Boles at the time of the events at issue in this proceeding. At the time she was deposed, she had married and changed her name to Stacie Wood. Herein, she is referred to as Stacie Wood.

while Knox was employed. (Id.) The GAP, Inc. operates both BRFS and the GAP. (Shepard Dep. at 20.)

In June 2002, a temporary assistant manager position opened due to the pregnancy of an assistant manager named Lillie White. (Knox Dep. at 66-68; Wood Dep. at 13-14.) The Plaintiff and two other employees, Melissa Fuller and Sherrill Averhart, applied for the position. (Knox Dep. at 83-85; Wood Dep. at 26-28.) Interviews for the position were conducted in early June 2002. (Fuller Dep. at 15, 18.) Stacie Wood and Orest Michaels conducted the interviews. (Knox. Dep. at 83; Wood Dep. at 28.) Although at that time Michaels was the manager of the GAP, he often assisted Wood in her operation of BRFS. (Wood Dep. at 16.) The interview took place in the manager's office at BRFS and lasted approximately 15-30 minutes.

At the time of the interviews, Fuller was a sales associate at BRFS, Knox was a stock supervisor at BRFS, and Averhart was the stock supervisor at the GAP. (Knox Dep. at 85; Wood Dep. at 27; Shepard Dep. at 40.) Fuller is a white woman, while the Plaintiff Knox and Averhart are a black women. (Wood Dep. at 26-27.)

Around the time of June and July 2002, employees at BRFS had made complaints along racial lines. (Wood Dep. at 42-44.) Melissa Fuller and another white employee raised complaints of unfair treatment by black supervisors. In response to these complaints, Michaels commented to Wood that BRFS needed to hire more white people. (Id.) Michaels' comment prompted Wood to make a complaint to the District Manager Cindi Cobine. (Id.) In response, a telephone conference between Wood, Cobine, and Michaels was held, but no disciplinary action was taken. (Id.) Knox and other employees at BRFS were aware of Michaels' comment, however. (Shepard Dep., Plaintiff's Ex. 4 at 3.) After the interviews, Michaels recommended that Fuller, the white employee,

be promoted. (Wood Dep. at 31.)

A couple of days after the interviews, Wood informed Knox that the company was not going to hire from within because it would be unfair since everyone had done well in their interviews. (Knox Dep. at 86.) That was the last that Knox heard about the temporary position until July 9, 2002, when, due to an on-the-job ankle injury, Knox went on a medical leave that would last until August 18, 2002. (Knox Dep. at 121-23; Shepard Dep. at 24.)

Sometime between the interviews in early June and August 14, 2002, BRFS made the decision to give Melissa Fuller the position of temporary assistant manager. (Knox Dep. at 88-89; Wood Dep. at 31-32, 77; Shepard Dep. at 16, 23-24.) Fuller testified that she received the promotion in late June, in which case the decision would have been made prior to Knox's medical leave. (Fuller Dep. at 15, 18.) BRFS relies on documentary evidence that the decision to promote Fuller to Acting Assistant Manager was made on August 14, 2002, after Knox was out on medical leave and prior to her return. (Plaintiff's Ex. 5.) Under BRFS' version of events, in August an assistant manager unexpectedly resigned, and, to avoid leaving BRFS with only one manager, the decision was made to give Fuller the temporary assistant manager position. (Wood Dep. at 31-32; Shepard Dep. at 16, 23-24.) The Plaintiff notes that BRFS has failed to come forward with the name of the assistant manager that BRFS alleges resigned at this time.

On August 14, 2002, Fuller signed a contract that set the terms of her position as a temporary assistant manager. (Plaintiff's Ex. 5.) The contract provided that she would continue to receive the same hourly wage, but that she also would receive a $200 a month bonus. (Id.) Fuller served in the temporary position for about six weeks until Lillie White returned from her maternity leave. (Fuller Dep. at 22-23.) When White returned, Fuller stopped receiving the $200 a month bonus. (Id.)

On August 18, 2002, Knox returned to work from the medical leave caused by her ankle sprain. (Knox Dep. at 121-23.) When she returned, Knox saw an announcement written at the bottom of the employees' work schedule that Fuller received the temporary assistant manager position. (Knox Dep. at 93.) Knox questioned Stacie Wood about decision to give Fuller the position. (Knox Dep. at 93-100.) Wood told Knox that Cindi Cobine, the District Manager, had instructed her to place Fuller in the position. Knox questioned Cobine about it, and Cobine denied instructing Wood to give Fuller the position. (Id.) Knox spoke with Wood about it again, and Wood again told Knox that Cobine instructed her to give Fuller the temporary assistant manager position. (Id.)

On August 21, 2002, Knox complained to Cindi Cobine about discrimination relating to Fuller's placement in the temporary assistant manger position. (Shepard Dep., Plaintiff's Ex. 4 at 1.) In response, the BRFS Employment Relations Office conducted an investigation in August and September of 2002. (Id.) As part of this investigation, Michelle Alexander, who became a BRFS District Manager after the events in question, interviewed Wood about the decision to award the temporary position to Fuller. During that interview, Wood told Alexander that Cindi Cobine instructed her to place Fuller into the position. (Shepard Dep., Plaintiff's Ex. 4 at 6-7.)

On September 12, 2002, Knox filed a complaint of discrimination with the EEOC. (Knox Dep., Defendant's Ex. 8.) In November 2002, Knox had surgery on her ankle and went on another medical leave. (Knox Dep. at 123-24.) Knox returned to work at BRFS in February 2003 on a part-time basis. (Id.) In March, Knox's doctor cleared her to return to full-time status. (Alexander Declaration ¶ 11.)

On April 21, 2003, Knox filed the instant proceeding. The Plaintiff served the Complaint on the Defendant on May 5, 2003. On May 12, 2003, the Defendant mailed a waiver of service to Plaintiff's counsel.

Knox claims that in June 2003 her hours were cut. Her hours were as follows during this period:

| | |
|---|---|
| March 30 - April 12 | 44.5 hours |
| April 13 - April 26 | 49.75 hours |
| April 27 - May 10 | 42.25 hours plus 10.25 hours vacation |
| May 11 - May 24 | 43 hours |
| May 25 - June 7 | 27 hours, plus 8 hours of vacation plus 3.25 hours of holiday |
| June 8 - June 21 | 4 hours |
| June 22 - July 5 | 41.7 hours plus 4.5 hours of holiday |
| July 6 - July 19 | 35.75 hours |
| July 20 - August 2 | 9 hours |

(Shepard Dep. at 35-36.)

In August 2003, Knox went on another medical leave to have additional surgery on her ankle. (Knox Dep. at 76, 124-26.) She has not since returned to work at BRFS. (Id.)

**IV.**
**Applicable Substantive Law and Analysis**

Plaintiff claims disparate treatment racial discrimination and retaliation under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. 2000e. Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

9

42 U.S.C. § 1981(a) (1994).[5]  The Court is aware that the summary judgment rule applies in job discrimination cases just as in other cases.  See Chapman, 229 F.3d at 1025 (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  See Standard, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.  See id.; see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987).  Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption."  Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990).  Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

---

[5] The same framework long used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under § 1981.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Here, Plaintiff has presented only circumstantial evidence of racial discrimination and retaliation. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527.  Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  See id. at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.[6]  See McDonnell Douglas, 411 U.S. at 802 (hiring); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also Nix, 738 F.2d at 1185 (discipline); Pittman v. Hattiesburg Mun. Separate Sch. Dist., 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate,

---

[6]See also McDonnell Douglas, 411 U.S. at 802 n.13 (observing that "[t]he facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations").

nondiscriminatory reason for its actions.[7]  See Combs, 106 F.3d at 1528.  The employer "need not persuade the court that it was actually motivated by the proffered reasons."  Burdine, 450 U.S. at 254-55; see Chapman, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[8]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  See Chapman, 229 F.3d at 1024-25.  Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  See Combs, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  Burdine, 450 U.S. at. 253.  Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the

---

[7] See Chapman, 229 F.3d at 1034 (stating that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion").

[8] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  Chapman, 229 F.3d at 1030.

12

employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-49, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion);[9] St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v. Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

Generally, to establish a prima facie case of retaliation a plaintiff must show: (1) that he engaged in protected activity; (2) that his employer was aware of that activity; (3) that he suffered an adverse employment action; and (4) there was a causal link between his protected activity and the adverse employment action. Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999) (citing Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997)). The burden-shifting framework outlined above for discrimination claims also applies to retaliation claims.

Defendant BRFS argues that it is entitled to summary judgment as to Plaintiff's race discrimination claims because (1) the Plaintiff has failed to make a prima facie case of race discrimination; (2) that even if Plaintiff has established a prima facie case, the Plaintiff has failed

---

[9] The court in Chapman modified the statement in Combs contrary to this holding in Reeves after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. See Chapman, 229 F.3d at 1025, n.11.

to rebut the Defendant's articulated legitimate nondiscriminatory reason for failing to award the temporary assistant manager position to Knox, and (3) that the Plaintiff has failed to make a prima facie case of retaliation.

**1. Disparate Treatment**

Plaintiff claims that the Defendant's failure to award the position of temporary assistant manager to the Plaintiff in the Summer of 2002 constitutes racial discrimination. The Court finds that Plaintiff cannot succeed on her discrimination claim because she cannot show that the alleged discrimination caused her any damages that she would not have otherwise experienced.

The critical hole in the Plaintiff's case relates to the undisputed fact that on August 14, 2002, the date on which the Defendant placed Fuller into the temporary assistant manager position, Knox was unavailable to fill the position due to the fact that she was on medical leave. (Shepard Dep. at 24; Knox Dep. at 121-23; Plaintiff's Ex. 5.) Plaintiff attempts to avoid judgment against her due to this deficiency by emphasizing that a reasonable jury could find, based on the conflicting evidence, that the decision to give Fuller the temporary position was made prior to Knox's medical leave. However, even accepting that premise, the irreducible fact is that Knox ultimately was not available to fill the position when the time came to fill it. Consequently, even if the Defendant discriminated against Knox in deciding who would receive the position, Knox would be unable to show that the discrimination caused any damages. Knox's ankle injury and the resulting medical leave intervened as an independent and sufficient cause preventing Knox from being available to receive the temporary assistant manager position. Thus, Knox could not have received the position regardless

of whether the Defendant discriminated against her.[10]  Unable to prove that any possible discrimination caused her damages, Knox's claim of discrimination fails.  See Nance v. Maxwell Fed. Credit Union, 186 F.3d 1338, 1342 (11th Cir. 1999) (where plaintiff's own action intervenes to prevent the defendant's discrimination from causing an injury, plaintiff is not entitled to any relief).

**2. Retaliation**

Plaintiff claims that the Defendant retaliated against her for filing the instant lawsuit by cutting her hours.  The Defendant argues that the Plaintiff's showing of reduced hours is too insignificant to qualify as an adverse employment action and argues that the Plaintiff has failed to show a causal nexus between her filing of the lawsuit and the reduction in her hours.

The Court finds that Plaintiff has presented sufficient evidence to allow this claim to proceed to a jury.  Although the Defendant cites to two Eleventh Circuit opinions for the proposition that the Plaintiff's showing of a reduction in hours is not cognizable as an adverse employment action, the cases the Defendant relies upon do not support its argument.  The first, Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001), does state that an alleged adverse employment action must be "serious and material," but that case did not involve a reduction in hours.  Instead, it involved a single negative performance evaluation and two instances where the plaintiff was

---

[10]The Plaintiff articulated a fallback position—made for the first time at oral argument—that there were two assistant manager positions: one that opened in June and another in August.  Under this theory, the Plaintiff argues that even if she was not available for the August position, she was available for the June position.  To dispose of this argument, it suffices to note that this theory is devoid of support in the record.  The record is undisputed that in the Summer of 2002 only a single temporary assistant manager position was filled and that position was filled while Knox was on medical leave.

reassigned to allegedly less prestigious duties. See id. at 1240. Furthermore, in that case the Eleventh Circuit emphasized that the alleged adverse employment action needed to be accompanied by a "tangible harm" and needed to alter "the terms, conditions, or privileges" of employment." Id. at 1244, 1246. Here, the Plaintiff's claim is based on a loss of money associated with a reduction in hours. The claim therefore involves both a tangible harm and an allegation that the terms of her employment were adversely altered.

In the second case relied upon by the Defendant, Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998), the Court held that the Plaintiff stated a valid claim of retaliation based upon evidence of a reprimand, a denial of a lunch break, a one-day suspension, verbal threats, and a request by management that the plaintiff's coworkers bring forth negative reports about the plaintiff. Wideman did not involve a reduction of hours. Furthermore, in Wideman the Eleventh Circuit expressly rejected the defendant's argument that Title VII's anti-retaliation provision should be read narrowly, based in part on the concern that a narrow reading could "stifle employees' willingness to file charges." Id. at 1456. Wideman therefore provides little authority for the Defendant's claim that the Plaintiff's allegation that her hours were reduced is not a cognizable basis for a retaliation claim.

Defendant's second argument is that the Plaintiff has failed to show causation. However, in Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d 799, 791 (11th Cir. 2000), the Eleventh Circuit held that "[t]he general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." Here, Knox alleges that her hours were reduced within two weeks of the service of her Complaint upon the Defendant. Under Brungart, that

temporal proximity is sufficient to give rise to a reasonable inference of causation.

Nevertheless, Defendant also argues that the Plaintiff is not entitled to an inference of causation based solely on temporal proximity because the Plaintiff has failed to show that the individual responsible for scheduling Knox had knowledge of her lawsuit.  Defendant's argument falls short, however, because the Defendant failed to come forward with any evidence that the individual responsible for scheduling Knox lacked knowledge of her suit.  Such evidence is a requirement for defeating the Plaintiff's entitlement to a causal inference based on temporal proximity.  See Brungart, 231 F.3d at 799 ("[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct.").  Here, unrebutted evidence of that quality is lacking.  Accordingly, BRFS has failed to demonstrate its entitlement to summary judgment on Knox's claim of retaliation.  See Wideman, 141 F.3d at 1457 (where plaintiff has shown causation between an adverse employment action and protected activity and the defendant fails to offer a nondiscriminatory reason for engaging in allegedly retaliatory acts, the plaintiff "is not required to present additional evidence in order to survive summary judgment").

## V.
## Conclusion

In summary, the Court finds that the Plaintiff failed to demonstrate the existence of material issues of fact as to whether she suffered any injury from the Defendant's alleged race discrimination,

but that she did demonstrate the existence of genuine issues of fact as to her claim of retaliation. A separate order will be entered.

      **DONE** and **ORDERED** this 29th day of November, 2004.

 

/s/ V.E. Hopkins
_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge